| AO 91 (Rev. 11/11)  Criminal Complaint | AUSA: Susan Fairchild | Telephone: (313) 226-9577 |
|---|---|---|
| | Officer: Meghan E. Howe | Telephone: 313-393-3793 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.

Olman Antonio DIAZ

Case No. 2:25−mj−30406
Assigned To : Unassigned
Assign. Date : 6/25/2025
Description: CMP USA v Diaz (SH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 21, 2025__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1326(a) | Unlawful Re-Entry Following Removal from the United States |
| 18 U.S.C. 1028(a)(4) | Possession of Fraudulent Identification Documents |

This criminal complaint is based on these facts:

On or about June 21, 2025, in the Eastern District of Michigan, Southern Division, Olman Antonio DIAZ, an alien from Honduras, was found in the United States after having been denied admission, excluded, deported, and removed there from on or about May 15, 2019, and not having obtained the express consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-apply for admission thereto; in violation of Title 8, United States Code, Section 1326(a)., and did possess a counterfeit U.S. Permanent Resident Card and a fraudulent U.S.Social Security Card, with the intent that they be used to defraud the United States, in violation of 18 U.S.C. 1028(a)(4).

*Complainant's signature*

Meghan E. Howe, Officer, U.S. CBP
*Printed name and title*

☑ Continued on the attached sheet.

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __June 25, 2025__

City and state: __Detroit, MI__

*Judge's signature*

Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Meghan E. Howe, being duly deposed and sworn states:

1. I am an Officer with the United States Department of Homeland Security (DHS), Customs and Border Protection (CBP). I have been employed with the same for over sixteen years. During my career as a law enforcement officer, I have been involved in various investigations and arrests concerning the reentry of removed aliens, and I have received training in this area.

2. The information set forth below is for the limited purpose of establishing probable cause. Therefore, this affidavit does not necessarily contain all the information collected during my investigation.

3. The defendant, Olman Antonio DIAZ, is a 35-year-old male native and citizen of Honduras, who last entered the United States at or near an unknown place, on or about an unknown date, without being inspected and then admitted or paroled into the United States by an immigration officer.

4. In the morning on June 21, 2025, DIAZ was encountered by CBP at the Detroit-Windsor Tunnel in Detroit, Michigan when he was observed to have stopped the car he was driving in the outbound traffic lanes toward Canada and was staring down at his phone. CBP Officers responded to the stopped vehicle. DIAZ cracked the driver's window a couple of inches and stated he was lost. CBP Officers asked DIAZ his citizenship and status in the United States, and he stated he did not wish to answer. CBP Officers directed DIAZ to shut off the vehicle and hand them the keys. CBP Officers opened the driver's door, removed DIAZ from the vehicle and escorted him to secondary inspection because he did not make a verbal declaration of his citizenship or status in the United States and had no proof of citizenship or valid immigration documents.

5. In the secondary inspection area, DIAZ's fingerprints were queried through the Automated Fingerprint Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS) which resulted in

matches to Fingerprint Identification Number (FIN) and FBI number, which correspond to the prior arrest and immigration actions below.

6. I queried DIAZ through immigration databases and found that on or about January 28, 2019, DIAZ was arrested by United States Border Patrol in or near Green Valley, Arizona and was found to be present in the United States without having been inspected and then admitted or paroled by an immigration officer. He was served with an Expedited Removal-Credible Fear and was charged with a violation of 8 USC §1325, Unlawful Entry.

7. On or about January 30, 2019, DIAZ pleaded guilty to one count of Improper Entry by Alien, in violation of Title 8, United States Code, Section 1325(a)(1), in the United States District Court of Arizona in Tucson and was sentenced to two days incarceration, with credit for time served.

8. On or about May 3, 2019, DIAZ was ordered removed from the United States by an Immigration Judge in Aurora, Colorado.

9. On or about May 15, 2019, DIAZ was removed from the United States to Honduras via Phoenix, Arizona.

10. I queried DIAZ through the Central Index System (CIS) and Computer Linked Application and Information Management System (CLAIMS). These databases are maintained by DHS and contain information relating to applications for immigration benefits and/or relief. Review of the records for DIAZ and queries in DHS databases confirm that no record exists of him obtaining permission from the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States after his removal on May 15, 2019.

11. I queried DIAZ through the Consular Consolidated Database (CCD), a database maintained by the Department of State, which contains passport and visa applications and records. I found no record of DIAZ ever having applied for or receiving a United States visa of any kind or classification.

12. I queried DIAZ through TECS, a United States government database that contains information about all persons who arrive in the United States at designated ports of entry and apply for admission. I found no record of DIAZ ever lawfully arriving or being inspected, admitted, or paroled into the United States by a United States border official.

13. DIAZ was arrested and detained by CBP on June 21, 2025, for administrative processing of reinstatement of his prior removal order.

14. The aforementioned arrest and subsequent detention was an administrative, non-criminal action made pursuant to the authority found in sections 1357, 1225, 1226, and/or 1231 of Title 8, United States Code to arrest and detain any alien entering or attempting to enter the United States, or any alien present in the United States, who is reasonably believed to be in violation of any law or regulation regulating the admission, exclusion, expulsion, or removal of aliens.

15. On June 21, 2025, a CBP Officer advised DIAZ of his Miranda rights verbally and in writing with the assistance of another CBP Officer translating in Spanish. DIAZ acknowledged his rights and agreed to answer questions without a lawyer being present. DIAZ stated he is a native and citizen of Honduras. DIAZ admitted that he was removed from the United States one time previously. DIAZ admitted he then reentered the United States illegally at some time during 2022 via the desert in or around Piedras Negras, Mexico. DIAZ further admitted he entered the United States without being inspected and was not in possession of valid entry documents nor permission from the Attorney General or the Secretary of the Department of Homeland Security to apply for admission into the United States.

16. During the recorded interview, DIAZ admitted he was encountered by CBP on June 21, 2025, while being in possession of a counterfeit I-551 card (Lawful Permanent Resident Card) and a counterfeit United States Social Security Card. DIAZ stated the documents bear his name but were not issued to him by the United States government. DIAZ stated someone told him he

3

needed the documents to secure employment, and he gave that person $100 to produce the fraudulent documents for him.

17. An investigation of the United States Permanent Resident Card and the United States Social Security Card revealed they were both false documents. Both documents bore his correct name however, the United States Social Security Card had a fraudulent number that was not assigned to any person. Immigration checks also determined there was no evidence of DIAZ obtaining permanent residence status, and therefore the United States Permanent Resident Card was fraudulent.

18. Based on the foregoing, there is probable cause to believe that, on or about June 21, 2025, at or near Detroit, Michigan, in the Eastern District of Michigan, Southern Division, Olman Antonio DIAZ an alien from Honduras, was found in the United States after having been denied admission, excluded, deported, or removed therefrom on or about May 15, 2019 at or near Phoenix, Arizona and not having obtained express consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission thereto; in violation of Title 8, United States Code, Section 1326(a). Further, there is also probable cause to believe that on or about June 21, 2025, DIAZ did possess a counterfeit United States Permanent Resident Card and a fraudulent United States Social Security Card with the intent that they be used to defraud the United States, in violation of 18 U.S.C. §1028(a)(4).

_Meghan Howe_
*Complainant's signature*

Meghan E. Howe, Officer, U.S. CBP
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

_____
Honorable Anthony P. Patti
United States Magistrate Judge

June 25, 2025

4